IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLTON BROWN                :

    v.                       :       Civil Action No. DKC 07-0170
                                     Criminal Case No. DKC 03-0538

UNITED STATES OF AMERICA     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion by Petitioner Carlton Brown to vacate, set aside, or correct his sentence. (ECF No. 91). The issues are fully briefed and the court now rules. For the reasons that follow, the motion will be denied.

**I. Background**

On November 24, 2003, a grand jury returned an indictment charging Petitioner Carlton Brown and two co-defendants with five counts of drug and firearms offenses. Brown was charged with conspiracy to distribute cocaine base, possession and distribution of crack cocaine on two separate dates, and possession of a firearm in furtherance of a drug conspiracy.

A jury trial began on Thursday, April 22, 2004. After two days of trial, Brown decided to plead guilty to the first count of the indictment – the conspiracy count – pursuant to a written plea agreement. After a Rule 11 hearing on Tuesday, April 27,

the court accepted Brown's plea. On August 27, 2004, however, Brown moved to withdraw his plea, arguing that under *Blakely v. Washington*, 542 U.S. 296 (2005), he could not be held accountable under the Sentencing Guidelines for more than 50 grams of cocaine (*i.e.*, the amount charged in the indictment).[1] The court denied Brown's motion and, on November 1, sentenced Brown to 262 months of imprisonment.[2]

Brown appealed the court's decision to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit affirmed the court's ruling on the motion to withdraw the plea regarding *Blakeley* and dismissed, as barred by an appeal waiver in the plea agreement, his remaining claim that the plea was not voluntary. *See United States v. Brown*, 158 F.App'x 397 (4th Cir. 2005). The Supreme Court denied certiorari on January 21, 2006. *See Brown v. United States*, 546 U.S. 1207 (2006). Brown then filed the present motion under 28 U.S.C. § 2255, which was docketed on January 18, 2007. (ECF No. 91). The government opposed (ECF No. 94) and Brown filed a reply. (ECF No. 99).

---

[1] He also argued that his plea was not knowing and voluntary, but later withdrew that contention.

[2] On May 13, 2009, the court reduced Brown's sentence to 210 months pursuant to 18 U.S.C. 3582(c)(2). (ECF No. 124).

**II. Standard of Review**

Title 28 U.S.C. § 2255 requires a petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." A pro se movant is of course entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978). But if the Section 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b).

**III. Analysis**

    **A. Ineffective Assistance of Counsel**

Brown contends that he received ineffective assistance of counsel. Such claims are governed by the well-settled standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate actual prejudice, he must show there is a "reasonable

3

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In applying *Strickland*, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney's performance been deficient. *See Strickland*, 466 U.S. at 697.[3]

In his first ineffective assistance claim, Brown contends that his counsel promised Brown that he would be sentenced only

---

[3] The Supreme Court recently admonished that defendants claiming ineffective assistance of counsel in the process of entering a guilty plea face an especially high burden. *See Premo v. Moore*, 131 S.Ct. 733, 745-46 (2011) ("The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.").

to five years imprisonment, but coached him not to reveal the secret deal during the Rule 11 hearing. He insists that, if he had known there was no secret deal, he would not have pled guilty.

Brown's allegations are flatly refuted by the record. At the Rule 11 hearing, Brown stated under oath that he understood that the mandatory minimum sentence was ten years, not five. He then acknowledged that the plea agreement was not binding on the court and that he would have no right to withdraw his plea based on the court's sentencing decisions. Brown further confirmed that he was pleading guilty based on the promises in the plea agreement and affirmed that no other promises had been made.[4] The court also emphasized that "[r]ight now nobody can make any promise to you concerning what the sentence is going to be."[5] After this discussion, Brown remained willing to plead guilty. "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are

---

[4] The only other relevant "promise" was the government's promise to withdraw its notice under 21 U.S.C. § 851, which sought to rely on Brown's prior convictions to establish a mandatory minimum sentence of 20 years.

[5] The court also explained that he had a right to trial by jury, but that he would waive that right by pleading guilty.

always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (quotation marks and citations omitted); *see also cf. Little v. Allsbrook*, 731 F.2d 238, 240 n.2 (4th Cir. 1984) ("In the absence of clear and convincing evidence to the contrary, [the defendant] must be bound by what he said at the time of his plea."). Such extraordinary circumstances are absent here. *See Brown*, 158 F.App'x at 398 ("The record clearly reveals that Brown voluntarily chose to plead guilty and that he understood the consequences of doing so."). His bare allegation that counsel coached him not to reveal the secret agreement during the plea colloquy – an allegation counsel denied by affidavit – does not change the outcome.[6] *Cf. United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) (finding defendant's conclusory statement that he lied during plea colloquy did not justify withdrawing plea); *see also Blackledge v. Allison*, 431 U.S. 63,

---

[6] Moreover, "[d]espite petitioner's contention that he was coached on his answers, he makes no claim that he was instructed to answer the Court's questions *falsely* or that he was threatened with harm if he did not answer *falsely*." *Nesbitt v. United States*, 773 F.Supp. 795, 800 (E.D.Va. 1991) (emphasis in original).

6

74 (1977) (explaining that conclusory allegations are insufficient to overcome "[s]olemn declarations in open court").[7]

Even putting Brown's statements at the Rule 11 hearing aside, further evidence supports the conclusion that there were no secret promises made. The plea agreement itself, which Brown signed and acknowledged that he read, provides that the court was not bound by the agreement and that Brown understood that "neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence [Brown] will receive." It concluded by noting that the plea agreement was the "complete agreement" and that there were no other "agreements, promises, undertakings or understandings" between the government and Brown. In sum, Brown affirmed time and again that he understood there were no secret deals.

Brown's second ineffective assistance claim alleges that his counsel wrongfully failed to move to withdraw his plea on

---

[7] Some parts of Brown's reply seem to say that his trial counsel never promised a five-year sentence, but rather "misadvised" Brown that he could receive such a sentence. If that were the case, such a mistaken sentence estimate would not support an ineffective assistance of counsel claim. *See United States v. Lambey*, 974 F.2d 1389, 1393-96 (4th Cir. 1992) (en banc); *cf. Little*, 731 F.2d at 241 ("An attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea.").

the basis that Brown did not understand the consequences of his plea. He also states that he instructed his attorney to reveal the alleged secret agreement (already discussed) within that motion to withdraw. Here again, there is no evidence of ineffectiveness. Given the "strong presumption" of validity that attaches to a plea once an appropriately conducted Rule 11 proceeding is held, *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992), an ambiguous argument that Brown did not understand his plea would have failed.[8] *Oken v. Corcoran*, 220 F.3d 259, 269 (4th Cir. 2000) ("[T]rial counsel was not constitutionally ineffective in failing to object . . . because it would have been futile for counsel to have done so."); *Truesdale v. Moore*, 142 F.3d 749, 755 (4th Cir. 1998) ("It was not constitutionally ineffective assistance for . . . counsel not to pursue futile claims."). Moreover, counsel *did in fact argue* that the plea should have been withdrawn because, among other things, "defendant felt pressured to enter the plea within certain time constraints." Trial counsel, in consultation with Brown, only decided not to pursue that argument when the

---

[8] In addition to the statements made by Brown during the Rule 11 hearing evidencing his understanding, the court notes that Brown was actively engaged in the proceeding – he asked questions and sought clarification on several issues related to the plea.

8

government threatened to rescind the plea agreement. Moreover, although trial counsel did not reveal the existence of any secret agreement in the motion to withdraw, that failure did not amount to ineffective assistance because there is no suggestion that any such agreement existed. Given the repeated admonitions in the plea agreement and from the court that there were no binding promises, any argument to the contrary would have been fruitless. Counsel did not render ineffective assistance in failing to move to withdraw Brown's guilty plea merely because Brown would have preferred him to take a different tack.

Brown next contends that there was a conflict of interest between Brown and his trial counsel. An "essential aspect" of the right to effective assistance of counsel "is a lawyer unhindered by conflicts of interest." *United States v. Nicholson*, 475 F.3d 241, 248 (4th Cir. 2007) (quotation marks omitted). When a petitioner brings a claim based on a conflict of interest, such a claim is governed by the standard found in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), rather than the *Strickland* standard. *Nicholson*, 475 F.3d at 249. Under that standard, Brown must show that his trial counsel operated under a "conflict of interest" and (2) that this conflict "adversely affected his lawyer's performance." *United States v. Nicholson*, 611 F.3d 191, 196 n.2 (4th Cir. 2010) (quoting *Cuyler*, 446 U.S.

9

at 348)). Brown maintains that a conflict of interest arose when his counsel refused to continue his representation unless Brown pled guilty and refused to present Brown's preferred defense.

A conflict of interest is not the same as any conflict in the ordinary sense. Rather, Brown must show that his interests "diverged from his attorney's with respect to a material factual or legal issue or to a course of action." *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (brackets and quotation marks omitted). These cases most often arise when, for example, counsel concurrently represents more than one defendant on the same criminal charge or where counsel has some relationship with the prosecution. Here, Brown's conflicts with his attorney are more akin to disagreements over strategy and litigation decisions. Where the disagreements do not entirely destroy the attorney-client relationship, such disagreements do not constitute legal conflicts of interests that establish ineffective assistance of counsel. *See, e.g.*, *United States v. Reyes-Bosque*, 596 F.3d 1017, 1034 (9th Cir. 2010) (finding no conflict of interests were the attorney-client conflict "centered on the fact that [the client] was unhappy with counsel's performance"); *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007) ("Mere disagreement about strategic

litigation decisions is not a conflict of interest."); *United States v. Jones*, 482 F.3d 60, 75 (2ᵈ Cir. 2006) (same). As the United States Court of Appeals for the D.C. Circuit has explained:

> Leggett notes that the rift with his counsel was sufficiently severe to motivate counsel to request to withdraw, and that during an ex parte discussion with the court counsel acknowledged it was "difficult to focus on what's going on" when he was being "second-guessed on everything." A client's difference of opinion regarding trial strategy hardly indicates that counsel is "actively representing conflicting interests." Just as friction between a trial counsel and the court does not, as a matter of law, create a conflict of interest between counsel and client, so too the expected and usual rifts that develop between disappointed defendants and their counsel cannot be characterized as conflicts of interest. Differences of opinion about the questions to pose to a witness or the argument to be made to the jury that do not amount to a breach of loyalty to the defendant are not "conflicts of interest."

*United States v. Leggett*, 81 F.3d 220, 227 (D.C. Cir. 1996) (citations omitted).

The closest Brown comes to establishing a genuine conflict of interest is his allegation that trial counsel threatened to withdraw his representation unless he pled guilty. Several items in the record disprove that allegation. First, the plea in this case was actually offered before trial, but Brown chose not to accept it initially. Nevertheless, counsel continued

representing Brown – including through two days of a jury trial. Second, trial counsel had no ability to withdraw unilaterally. *See* Local Rule 201.3 ("Counsel for a defendant may withdraw their appearance only with leave of Court."). Third, Brown stated during the Rule 11 proceeding that no one had threatened him "in any way to induce him to plead guilty," and he affirmed in the plea agreement that he was "completely satisfied with the representation of [his] attorney." In short, there is no support for any alleged threat to withdraw.

There was no conflict here. It follows that trial counsel did not render ineffective assistance.

**B. Sixth Amendment Rights**

In Brown's last argument, he contends that this court violated his Sixth Amendment right to trial by jury in increasing his sentence beyond the statutory minimum using facts that he did not and were not submitted to a jury. As noted above, Brown raised the same argument in his direct appeal of his guilty plea. *Brown*, 158 F.App'x at 397 (citing *Blakeley v. Washington*, 542 U.S. 296 (2005)). The Fourth Circuit dismissed that challenge based on the appeal waiver found in Brown's plea agreement. *Id.* at 398.

The Fourth Circuit's decision on direct appeal forecloses relief in this collateral proceeding. In *United States v.*

12

*Linder*, 552 F.3d 391, 396-97 (4th Cir. 2009), the Fourth Circuit explained:

> On direct appeal, [the defendant] challenged his sentence based on *Blakely* and *Booker*. Consistent with *Shea*'s instruction that the appellate court must give retroactive effect to a new rule for the conduct of criminal prosecutions, subject to waiver, we refused to give effect to *Blakely* or *Booker* because [the defendant]'s challenges were within the scope of his plea agreement's knowing and voluntary direct appeal waiver. [The defendant] may not circumvent a proper ruling on his *Booker* challenge on direct appeal by re-raising the same challenge in a § 2255 motion. We therefore conclude that relief under *Booker* is unavailable to Linder on collateral review.

(internal citations, quotation marks, brackets, and ellipses omitted). The same principle applies here: as the Fourth Circuit considered and rejected Brown's *Blakeley* claim on direct review, he may not use this proceeding to escape that ruling. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *Anderson v. United States*, 468 F.Supp.2d 780, 785 (D.Md. 2007) ("It is well-settled law that an issue that has been determined on direct appeal may not be relitigated in a § 2255 motion."). Indeed, the bar is even stronger here, where the Fourth Circuit denied Brown's claim on the merits, instead of relying on just the appeal waiver.

## IV. Conclusion

For the foregoing reasons, Brown's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that

14

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted). Upon its review of the record, the court finds that Brown does not satisfy the above standard.

A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
